# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK A. MCAULIFFE, JR.,**

      **Plaintiff,**

     **vs.**
                                                  **Civ. No. 17-839  KK**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16) filed November 14, 2017, in support of Plaintiff Mark McAuliffe's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits.  On March 16, 2018, Plaintiff filed his Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing With Supporting Memorandum ("Motion").  (Doc. 23.)  The Commissioner filed a Response in opposition on May 10, 2018 (Doc. 24), and Plaintiff filed a Reply on May 30, 2018.  (Doc. 25.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**[2]

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 12, 13.)

[2] The Court is remanding for additional administrative proceedings.  *See* Section III.D., *infra*.

# I.  Background and Procedural Record

Claimant Mark Mcauliffe ("Mr. Mcauliffe") alleges that he became disabled on November 10, 2008, at the age of twenty-five because of a fractured disc in his lower back, numbness and tingling in left leg, learning disability, mental issues, attention-deficit/ hyperactivity disorder, and dyslexia.  (Tr. 194, 725.[3])  Mr. Mcauliffe completed the ninth grade in 1997, and worked as a fast food restaurant cook, residential construction framer, swimming pool construction laborer, landscaping company laborer, and tile supply store delivery person. (Tr. 195, 726, 733-40.)  Mr. Mcauliffe reported he stopped working on August 31, 2008, due to his medical conditions.[4]  (Tr. 725.)

On December 18, 2008, Mr. Mcauliffe protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.     (Tr. 161-69.) Mr. McAuliffe's application was denied initially and at reconsideration.  (Tr. 62, 63, 64-66, 72-75.)  On June 28, 2010, Mr. Mcauliffe requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 76-78.)  ALJ Michelle E. Lindsay conducted a hearing on May 24, 2012.  (Tr. 24-61.)   On August 3, 2012, ALJ Lindsay issued an unfavorable decision.   (Tr. 9-19.)   On November 7, 2013, the Appeals Council issued its decision denying Mr. McAuliffe's request for review and upholding the ALJ's final decision.  (Tr. 1-6.)  On January 8, 2014, Mr. Mcauliffe timely filed a Complaint seeking judicial review of the Commissioner's final decision.  (USDC NM Civ. No. 14-25 SMV, Doc. 1.)   In the meantime, however, on December 4, 2013, Mr. Mcauliffe filed a second application for SSI.   (Tr. 695-702.)   On June 11, 2014,

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on November 14, 2017.

[4] On January 5, 2009, Mr. Mcauliffe reported that he stopped working because he "was a delivery person, and once the economy started to get worse, they didn't need [his] services anymore.  Business got slow and people started to pick up their own products instead of having them delivered."  (Tr. 194.)

Mr. Mcauliffe's second application was initially denied. (Tr. 557-67, 568, 603-06.) On January 2, 2015, it was denied at reconsideration. (Tr. 569, 570-61, 611-14.) On April 6, 2015, Magistrate Judge Stephan M. Vidmar remanded Mr. Mcauliffe's case for further proceedings as to his first application.[5] (*Id.* at Doc. 22.) On May 7, 2015, the Appeals Council entered an Order Remanding Case to Administrative Law Judge. (Tr. 598.) Therein, the Appeals Council instructed the ALJ as follows:

> The claimant filed [a] subsequent claim for Title XVI benefits on November 19, 2013. The Appeals Council's action with respect to the current claim renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims (20 CFR 416.1452, HALLEX I-1-10-10). In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, will associate the claim files and issue a new decision on the associated claims.

(Tr. 598.) ALJ Lillian Richter held a second administrative hearing via videoconference on May 4, 2017. (Tr. 495-531.) Mr. Mcauliffe appeared in person at the hearing with attorney representative Mark Hendricks.[6] (*Id.*) The ALJ took testimony from Mr. Mcauliffe (Tr. 502-26), and an impartial vocational expert ("VE"), Sandra Trost (Tr. 526-31). On May 31, 2017, ALJ Lindsay issued an unfavorable decision. (Tr. 473-86.) Because this case had already been remanded following judicial review, Mr. Mcauliffe timely filed the instant action, rather than requesting review by the Appeals Council, as permitted by 20 C.F.R. § 416.1484(d). (Doc. 1.)

---

[5] Judge Vidmar found that the ALJ impermissibly relied on the medical-vocational guidelines to find Mr. Mcauliffe not disabled at step five where the ALJ's RFC included nonexertional limitations. (USDC NM Civ. No. 14-25 SMV, Doc. 22 at 11-13.)

[6] Mr. Mcauliffe is represented in this proceeding by Attorney Francesca J. MacDowell. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[7] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[7] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.**    <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Mcauliffe was not disabled at step five of the sequential evaluation. (Tr. 484-86.) Specifically, the ALJ determined that Mr. Mcauliffe had not engaged in substantial gainful activity since December 18, 2008, the date of his application. (Tr. 478.) She found that Mr. Mcauliffe had severe impairments of degenerative disc disease of the lumbar spine, lumbar spondylolysis, mild degenerative disc disease of the thoracic spine, radiculopathy of the lumbar region, dyslexia, attention-deficit/hyperactivity disorder (ADHD), intermittent explosive disorder, and chronic pain syndrome. (*Id.*) The ALJ also found that Mr. Mcauliffe had nonsevere impairments of hypertension, asthma, and cannabis dependence. (*Id.*) The ALJ, however, determined that Mr. Mcauliffe's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. (Tr. 479-80.) As a result,

the ALJ proceeded to step four and found that Mr. Mcauliffe had the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b).  The ALJ added that

> [s]pecifically, the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, can stand/walk for 6 hours and sit for 6 hours in an 8 hour day.  The claimant can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can never balance; can never climb ladders, ropes, and scaffolds; should avoid exposure to vibration; is limited to simple, routine, and repetitive work; is limited to occasional interaction with supervisors, co-workers, and members of the public; and cannot perform assembly line work.

(Tr. 481.)  The ALJ further concluded at step four that Mr. Mcauliffe was not able to perform any past relevant work.  (Tr. 484.)  At step five, the ALJ determined that based on Mr. Mcauliffe's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Mr. Mcauliffe could perform and was, therefore, not disabled.  (Tr. 485-86.)

In support of his Motion, Mr. Mcauliffe argues broadly that the ALJ's RFC was contrary to substantial evidence because the medical evidence either was not weighed at all, or was weighed in a manner contrary to law.  (Doc. 23 at 7-42.)  Specifically Mr. Mcauliffe argues that (1) the ALJ failed to evaluate and weigh treating physician Dr. Brian P. Delahoussaye's opinions regarding Mr. Mcauliffe's inability to work and functional limitations; (2) the ALJ improperly adopted nonexamining State agency medical consultant opinions; (3) the ALJ failed to evaluate and weigh examining neuropsychologist Noah Kaufman, Ph.D.'s opinion regarding Mr. Mcauliffe's ability to perform work-related mental activities; and (4) the ALJ failed to properly evaluate Mr. Mcauliffe's allegations of disabling pain.  (*Id.*)

For the reasons discussed below, the Court finds this case requires remand.

A.    **The ALJ Failed to Evaluate and Weigh Treating Physician Brian
      Delahoussaye's M.D., Opinion**

Mr. Mcauliffe argues that the treatment evidence from Dr. Delahoussaye was
voluminous, and that Dr. Delahoussaye offered opinion evidence regarding Mr. Mcauliffe's
inability to work and functional limitations that the ALJ failed to discuss, evaluate or weigh.
(Doc. 23 at 15.)  Mr. Mcauliffe specifically cites Dr. Delahoussaye's treatment notes in which he
indicated that Mr. Mcauliffe was "totally incapacitated at this time," "unable to walk 100 feet
without stopping to rest and is so severely limited in the ability to walk due to his orthopedic
condition that he cannot ascend or descend more than 10 stair steps," and that Mr. Mcauliffe's
combined physical and mental impairments made it "impossible for him to find gainful
employment."  (Tr. 894, 933, 1168.)  The Commissioner contends that Dr. Delahoussaye did not
offer any actual opinions indicating that Mr. Mcauliffe had any specific work-related limitations
or abilities that required weighing, and that statements that a claimant is incapacitated or unable
to work are similarly not true medical opinions but address issues reserved to the Commissioner.
(Doc. 24 at 9-10.)  The Commissioner also contends that a physician's ordering of a handicap
placard does not qualify as a medical opinion that the ALJ was required to discuss.  (*Id.* at 11.)

Dr. Delahoussaye began treating Mr. Mcauliffe on January 15, 2010, on a referral from
Paul Saiz, M.D.  (Tr. 994-96.)  Mr. Mcauliffe had been hit by a car while crossing the street on
November 10, 2008, and injured his back.  (Tr. 233-54.)  Although initial imaging was benign,
his back pain persisted and on June 4, 2009, x-rays and CT scan demonstrated pars
interarticularis fractures at L5 and bilateral L5 spondylolysis without associated listhesis.
(Tr. 256, 262.)  As a result, treating physician David Valenzuela, M.D., referred Mr. Mcauliffe
for orthopedic evaluation.  (Tr. 276.)

On September 8, 2009, Mr. Mcauliffe saw PA-C Regan Dunnahoo from Las Cruces Orthopaedic Associates.[8] (Tr. 265.) Mr. Mcauliffe reported constant back, with some left flank numbness with occasional stabbing pain. (*Id.*) PA-C Dunnahoo noted that Mr. Mcauliffe reported going to the gym and working his upper body, but did not work his lower body due to pain. (*Id.*) Mr. Mcauliffe explained that he was "self-treating" his pain because up until recently he had no insurance. (*Id.*) PA-C Dunnahoo noted that Mr. Mcauliffe constantly needed to shift positions in his chair because he could not get comfortable. (Tr. 265.) On physical exam, she noted that his lumbar spine range of motion was decreased and that the "spinous processes L3 through S1 [were] exquisitely tender on palpation." (Tr. 266.) PA-C Dunnahoo ordered an MRI and prescribed a muscle relaxant and pain medications. (Tr. 266.) The MRI demonstrated a mild circumferential disc bulge at L4-5 and a circumferential disc bulge at L5-S1, with no evidence of herniation or canal stenosis. (Tr. 439.) On September 29, 2009, PA-C noted no change on physical exam and characterized the MRI findings as "normal." (Tr. 264.) She ordered an EMG nerve conduction study and a T-spine MRI, and planned to refer Mr. Mcauliffe for physical therapy. (*Id.*) On December 18, 2009, Mr. Mcauliffe reported he had been using marijuana to help control his pain, and that he continued to go to the gym daily which was helping with his back pain quite a bit. (Tr. 263.) PA-C Dunnahoo noted no change on physical exam and that the T-spine MRI and EMG nerve conduction study were within normal limits. (Tr. 263.) She instructed Mr. Mcauliffe to consider epidural steroid injections and therapeutic deep tissue massage. (*Id.*) Shortly thereafter, Mr. Mcauliffe initiated pain management with Dr. Delahoussaye on a referral from Dr. Saiz. (Tr. 994-96.)

On April 27, 2011, despite ongoing conservative treatment for pain with Dr. Delahoussaye for sixteen months, Mr. Mcauliffe had no overall improvement and Dr. Saiz

---

[8] Dr. Valenzuela referred Mr. Mcauliffe to Dr. Paul Saiz of Las Cruces Orthopedic Associates. (Tr. 276.)

recommended back surgery. (Tr. 327-29.) On July 8, 2011, a lumbar discogram revealed the L5-S1 disc was degenerative and narrowed. (Tr. 319.) On August 19, 2011, Mr. Mcauliffe underwent a posterior spinal fusion, with admitting diagnoses of degenerative disc disease, L5-S1 and Listhesis of L5, S1. (Tr. 382.) Mr. Mcauliffe reported that after surgery his pain was worse.[9] (Tr. 305-07, 308, 311-13, 435-36, 943-47, 946-49, 1068.) He continued pain management with Dr. Delahoussaye.

On November 14, 2014, a lumbosacral spine CT scan demonstrated (1) "[c]hronic bilateral L5 pars spondylolysis defects but no significant spondylolisthesis"; (2) that the L5-S1 disc bar-spacer was "positioned eccentrically off to the left and posteriorly"; and (3) that there were "some bone fusion chips about the right fixation rode which [did] not appear completely solid." (Tr. 1092.) On November 21, 2014, Fernando Ravessoud, M.D., assessed that Mr. Mcauliffe's fusion had failed, and that any surgery to remove the fusion hardware would be too difficult. (Tr. 1160-161.) Dr. Ravessoud noted that there was a concern regarding compression of the nerve root by the fusion hardware. (*Id.*)

Dr. Delahoussaye managed Mr. Mcauliffe's lower back pain both before and after his spinal fusion, seeing him thirty-five times over the course of six years. (Tr. 308-10, 311-13, 314-16, 317-18, 323-24, 327-29, 331-33, 334-36, 337-39, 886-90, 891-95, 896-99, 900-04, 905-08, 911-15, 916-20, 921-25, 926-28, 931-34, 935-39, 939-42, 943-47, 964-68, 980-82, 983, 984-85, 988, 991, 994-96, 1100-109, 1110-111, 1112-116, 1118-122, 1127-130, 1165-168.) Dr. Delahoussaye treated Mr. Mcauliffe's lower back pain with physical therapy, aquatic therapy, epidural steroid injections, spinal cord stimulation, narcotic pain medication, and

---

[9] Dr. Saiz noted on November 15, 2011, that Mr. Mcauliffe's pain was worse and that he was using a cane. (Tr. 435-36.) Dr. Saiz also noted that his subjective symptoms outweighed any objective findings and that "[w]e have symptoms that do not make sense at this stage." (*Id.*) Dr. Saiz planned to turn Mr. Mcauliffe over to pain management. (*Id.*)

medical marijuana. (*Id.*) Mr. Mcauliffe eventually chose to control his pain primarily with medical marijuana, which he stated was the most helpful.[10] (Tr. 886-90, 1197-199, 1267.) Dr. Delahoussaye's physical exams over the course of his treatment consistently indicated no exaggerated pain behavior, midline spinal and paralumbar tenderness, decreased range of lumbar motion, and positive straight leg raise and crossed straight leg raise tests. (Tr. 306-07, 310, 312, 315, 316, 325, 328-29, 335, 338, 888, 893, 897-98, 902, 906-07, 913, 918, 923, 928, 933, 937, 941, 980, 995, 1102, 1114, 1119-120, 1167, 1199.) Dr. Delahoussaye made notes regarding Mr. Mcauliffe's gait on only eight of his treatment notes, but indicated on six of them that Mr. Mcauliffe's gait was mildly or moderately antalgic. (Tr. 329, 893, 937, 1102, 1114, 1120.) Dr. Delahoussaye opined regarding Mr. Mcauliffe's ability to work and functional limitations in three treatment notes. On June 13, 2012, Mr. Mcauliffe presented to Dr. Delahoussaye with complaints of worsening back pain and restlessness in his legs. (Tr. 931.) He also reported that he was unable to sleep and that the medical marijuana and hydrocodone were helping only minimally. (*Id.*) Following a physical exam, Dr. Delahoussaye assessed chronic back pain, lumbar disc degeneration, and postlaminectomy syndrome lumbar region. (Tr. 933.) Dr. Delahoussaye planned to continue current medications and to obtain labs to ensure compliance. (*Id.*) Dr. Delahoussaye also noted as to Mr. Mcauliffe's work status that he was "totally incapacitated at this time." (*Id.*) On November 20, 2013, Mr. Mcauliffe saw Dr. Delahoussaye with continued complaints of back pain and reported that he was experiencing left hip pain that had worsened in the last three months. (Tr. 891.) Mr. Mcauliffe requested a handicap parking permit. (*Id.*) Dr. Delahoussaye noted that he completed and signed the

---

[10] On May 4, 2017, Mr. Mcauliffe testified that he only treats his pain with medical marijuana. (Tr. 503.) He testified that without medical marijuana his pain is 8/10 or 10/10, but that with medical marijuana his pain is between 5-7/10. (*Id.*)

necessary form. (Tr. 894.) Dr. Delahoussaye further noted that "[t]he patient is unable to walk 100 feet without stopping to rest and is so severely limited in the ability to walk due to his orthopedic condition that he cannot ascend or descend more than 10 stair steps. His disability is temporary and the placard should be issued for 12 months." (*Id.*) On January 18, 2015, Mr. Mcauliffe returned to Dr. Delahoussaye with complaints of back, hip, and lower left leg discomfort, and reported Dr. Ravessoud's assessment regarding the displaced hardware spacer in his back. (Tr. 1165.) Dr. Delahoussaye reviewed the CT findings and examined Mr. Mcauliffe. (Tr. 1166-167.) Dr. Delahoussaye noted that Mr. Mcauliffe "had back surgery [and] the recent CT scan shows that this patient may be irritating the nerve. He also has attention deficit disorder. Th[is] combination of difficulties make [] it impossible for him to find gainful employment." (Tr. 1168.)

An ALJ must give good reasons for the weight assigned to a treating physician's opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ must first determine whether the treating physician's opinion is entitled to controlling weight, and if it is not, the ALJ still must assign a weight to the opinion based on the factors provided in 20 C.F.R. 416.927(c).[11] *Id.* If, after considering the pertinent factors the ALJ rejects the opinion completely, "[s]he must then give specific, legitimate reasons for doing so." *Id.* at 1301. A treating source's opinion on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1-2.[12] However, opinions from any medical

---

[11] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(c)(2)-(6) (evaluating opinion evidence for claims filed before March 27, 2017).

[12] On March 27, 2017, SSR 96-5p and the way adjudicators should consider and articulate their consideration of medical source opinions on issues reserved to the Commissioner in the notice of the determination or decision was rescinded for all claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 (explaining that for

source about issues reserved to the Commissioner must not be ignored, and the notice of determination or decision must explain the consideration given to the treating source's opinion. *Id.*; *see also Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (unpublished) (explaining that providing an opinion that a claimant is "unable to work" can never be entitled to controlling weight, but the ALJ is still required to assess the weight of a treating physicians' opinion by applying the relevant regulatory factors).

The ALJ failed to discuss, evaluate or weigh Dr. Delahoussaye's opinions regarding Mr. Mcauliffe's inability to work and functional limitations as she was required to do. This is reversible error. *Watkins*, 350 F.3d at 1301. Here, Dr. Delahoussaye did not prepare a formal medical source statement regarding Mr. Mcauliffe's abilities to do work-related physical activities. However, within his treatment notes, Dr. Delahoussaye indicated certain opinions regarding Mr. Mcauliffe's inability to work and his functional limitations. Two of Dr. Delahoussaye's opinions were clearly on issues reserved to the Commissioner – that Mr. Mcauliffe was totally incapacitated and that it was impossible for him to find gainful employment. (Tr. 933, 1168.) Although the Commissioner correctly argues these are not true medical opinions, the ALJ was nonetheless required to assess the weight of Dr. Delahoussaye's opinion as to those issues, applying the relevant regulatory factors. *Wade*, 258 F. App'x at 706; SSR 96-5p, 1996 WL 374183, at *3. Dr. Delahoussaye also noted certain functional limitations in conjunction with Mr. Mcauliffe's application for a handicap parking permit. (Tr. 894.) The Commissioner argues that statements that an individual qualifies for a handicap placard are not true medical opinions, and cites case law for the premise that the "ordering of" or "checking of a box on an application for" a parking placard does not qualify as a medical opinion. (Doc. 24 at

---

claims filed after March 27, 2017, adjudicators will not provide any articulation about their consideration of this evidence because it is inherently neither valuable nor persuasive).

11.)  However, that is not the case here.  Dr. Delahoussaye's notes do not indicate that he merely ordered a handicap parking placard, or that he checked a box on a preprinted application form.  Instead, Dr. Delahoussaye indicated in his treatment note the specific basis of his decision to complete and sign the application on Mr. Mcauliffe's behalf – that Mr. Mcauliffe was "unable to walk 100 feet without stopping to rest and was so severely limited in his ability to walk due to his orthopedic condition that he could not ascend or descend more than 10 stair steps."  (Tr. 894.)  This is a medical opinion regarding Mr. Mcauliffe's functional limitations that the ALJ either improperly ignored or failed to provide specific reasons for rejecting.  *Watkins*, 350 F.3d at 1300.

Additionally, it is not clear from the ALJ's determination that she "thoroughly considered Dr. Delahoussaye's treatment notes" as the Commissioner argues.  (Doc. 24 at 11.)  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining that an ALJ is not required to discuss every piece of evidence, but must discuss the significantly probative evidence she rejects).  For example, the ALJ concluded that the objective medical evidence demonstrated that Mr. Mcauliffe generally had negative straight leg raise tests, that his motor examinations were largely unremarkable, that he was noted to have only mild decreased range of motion, and that while some notes reported an antalgic gait, others showed a gait within normal limits.  (Tr. 482.)  In making these particular findings, the ALJ cited only *two* of Dr. Delahoussaye's records; *i.e.,* Ex. 16F/6-9 (Tr. 886-90) and 19F/6 (Tr. 1105).[13]  Moreover, the ALJ's findings are contradicted

---

[13] The ALJ cited to a total of five records to support this finding.  (Tr. 482.)  She cited a February 24, 2011, treatment authored by PA Mahli Michael of Las Cruces Orthopedic Associates, who noted an essentially normal physical exam on that date.  (Tr. 440.)  She cited Dr. Delahoussaye's January 9, 2014, treatment note in which he indicated paralumbar, quadratus lumborum, and buttocks tenderness; mildly decreased range of motion; positive straight leg raise and crossed straight leg raise on the left; and non-antalgic gait.  (Tr. 888.)  She cited Dr. Delahoussaye's July 24, 2014, treatment note in which he indicated midline spinal, paralumbar, and buttocks tenderness; mildly to moderately decreased range of motion; positive straight leg raise and crossed straight leg raise tests; and moderately antalgic gait.  (Tr. 1102-103.)  She cited a May 23, 2016, treatment noted authored by PA Jessica Granger, who noted midline spinal, paralumbar, quadratus lumborum, and buttocks tenderness; decreased range of motion; and non-antalgic gait.  (Tr. 1199.)  She cited a December 16, 2016, treatment noted authored by FNPC Michael O'Connell, who noted an essentially normal physical exam.  (Tr. 1261.)

by Dr. Delahoussaye's physical exams which consistently demonstrated midline spinal and paralumbar tenderness, decreased range of lumbar motion, positive straight leg raise and crossed straight leg raise tests, and mild to moderate antalgic gait. (Tr. 306-07, 310, 312, 315, 316, 325, 328-29, 335, 338, 888, 893, 897-98, 902, 906-07, 913, 918, 923, 928, 933, 937, 941, 980, 995, 1102, 1114, 1119-120, 1167, 1199.) The ALJ also relied on a single treatment note from Dr. Saiz to support her conclusion that Mr. Mcauliffe had exaggerated pain behavior (Tr. 435),[14] but ignored the *eighteen* treatment notes in which Dr. Delahoussaye indicated Mr. Mcauliffe exhibited no exaggerated pain behavior. (Tr. 306, 315, 328, 338, 888, 893, 897, 902, 906, 913, 918, 923, 937, 941, 1102, 1114, 1167, 1199.) Finally, the ALJ concluded from a February 4, 2011, pre-surgery treatment note by a one-time examining physician's assistant that Mr. Mcauliffe was noted to have drug seeking behavior (Tr. 440),[15] but failed to discuss Dr. Delahoussaye's September 26, 2012, note in which he indicated that

> [i]n the past I did raise issues or concerns and wondered whether [Mr. Mcauliffe] was exhibiting drug seeking behavior, however, his behavior has been appropriate with me and his record of medication use has been appropriate without any demonstrative drug seeking behavior or misuse of medications. Currently, I believe that his pain complaints are legitimate as his preoperative pain was confirmed by the discogram.

(Tr. 923.) The ALJ also failed to discuss Dr. Delahoussaye's treatment notes which indicated that by 2014, Mr. Mcauliffe had decided to treat his pain primarily with medical marijuana. (Tr.

---

[14] On November 15, 2011, Mr. Mcauliffe saw Dr. Saiz three months after his spinal fusion surgery. (Tr. 435.) Mr. Saiz reported worsening pain and that physical therapy was not helping. (*Id.*) Dr. Saiz noted that he had spoken with the physical therapist who reported Mr. Mcauliffe exhibited "over exaggerated pain behaviors during physical therapy." (*Id.*)

[15] On February 24, 2011, Mr. Mcauliffe saw PA Mahli Michael of Las Cruces Orthopaedic Associates complaining of continued back and leg pain. (Tr. 408.) PA Michael noted that Mr. Mcauliffe had "quite a history of drug seeking behavior was [was] currently under contract with Dr. Delahoussaye." (*Id.*)

890, 1199.) The ALJ's determination, therefore, fails to demonstrate that she thoroughly considered Dr. Delahoussaye's treatment records.

For the foregoing reasons, the Court finds that the ALJ failed to properly evaluate and weigh Dr. Delahoussaye's medical opinion evidence regarding Mr. Mcauliffe's inability to work and functional limitations. This is reversible error and requires remand.

### B. The ALJ's Analysis of Pain Evidence Is Not Supported by Substantial Evidence

Mr. Mcauliffe argues that the ALJ erred in her analysis regarding his evidence of pain and that it is not supported by substantial evidence. (Doc. 23 at 23-24.) The Commissioner contends that the ALJ reasonably found that Mr. Mcauliffe's daily activities were more consistent with the limited demand of light work than disabling pain, and that the ALJ reasonably considered the treatment notes and medical opinions of record to assess a very limited residual functional capacity assessment. (Doc. 24 at 16-17.)

The Tenth Circuit has explained the framework for the proper analysis of a claimant's evidence of pain. "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988)). Instead, "[b]efore an ALJ need consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). If a claimant does so, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective complaints of pain. *Id.* Finally, if there is a loose nexus, the ALJ considers all of the evidence, both objective and subjective, to determine whether the pain was disabling. *Id.* Even if pain is not disabling, it is still a nonexertional impairment to be

taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1491.

The first step in the three-step analysis of subjective pain is to determine whether objective medical evidence demonstrates the existence of a pain-producing impairment. Here, the ALJ stated there was no dispute that Mr. Mcauliffe had a number of impairments including, *inter alia*, back issues and chronic pain syndrome. (Tr. 482.) Because Mr. Mcauliffe proved by objective medical evidence the existence of a pain-producing impairment, the ALJ was required to determine whether there was a "loose nexus" between Mr. Mcauliffe's proven impairment and his subjective complaints, and then decide whether she believed him. *Id.* at 1489. In determining the credibility of pain testimony, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.*

Here, the ALJ stated that Mr. Mcauliffe's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that the medical evidence of record failed to establish that Mr. Mcauliffe was limited to the degree he alleged. (Tr. 482.) In support, the ALJ found (1) that in December 2009 Mr. Mcauliffe reported going to the gym daily; (2) that imaging of Mr. Mcauliffe's spine during that period was normal despite the accident; (3) that physical therapy notes highlighted that he had over exaggerated pain behaviors and that his subjective complaints outweighed any objective findings; (4) that he was noted to have drug seeking behavior; (5) that his straight leg raises were negative; (6) that a motor examination was largely unremarkable; (7) that he had only mildly decreased range of motion; (8) that some

treatment notes indicated a normal gait; and (9) there were gaps in his treatment.  (Tr. 482.)

Many of the ALJ's findings, however, are taken out of context or are not supported by

substantial evidence.  For example, Mr. Mcauliffe reported going to the gym daily in late 2009,

but explained that he only worked his upper body and did not work his lower body due to pain.

(Tr. 265.)  The ALJ discussed Mr. Mcauliffe's 2009 imaging results, but failed to discuss later

imaging that provided an objective basis for proceeding with spinal fusion surgery, and even

later imaging that demonstrated the spinal fusion had failed.  (Tr. 319-20, 1092-93.)  As

previously discussed, the ALJ relied on one note to support her finding that Mr. Mcauliffe had

exaggerated pain behavior (Tr. 435), but ignored eighteen treatment notes in which

Dr. Delahoussaye indicated Mr. Mcauliffe exhibited no exaggerated pain behavior, and that

objective evidence supported his complaints of pain.  (Tr. 306, 315, 328, 338, 888, 893, 897,

902, 906, 913, 918, 923, 937, 941, 1102, 1114, 1167, 1199.)  Similarly, the ALJ relied on a note

from a one-time examining PA to support a finding that Mr. Mcauliffe was drug seeking, but

failed to discuss Dr. Delahoussaye's detailed entry wherein he found Mr. Mcauliffe's medication

use appropriate without any demonstrative drug seeking behavior.  (Tr. 923.)  Finally, the ALJ

found that Mr. Mcauliffe's exam findings were essentially normal, but failed to discuss

Dr. Delahoussaye's physical exams which consistently demonstrated otherwise.  (Tr. 306-07,

310, 312, 315, 316, 325, 328-29, 335, 338, 888, 893, 897-98, 902, 906-07, 913, 918, 923, 928,

933, 937, 941, 980, 995, 1102, 1114, 1119-120, 1167, 1199.)  The ALJ, therefore, failed to

discuss probative medical evidence she implicitly rejected in analyzing Mr. Mcauliffe's

allegations of disabling pain.  *Clifton,*  79 F.3d at 1009-10; *see also Robinson v. Barnhart*, 366

F.3d 1078, 1084 (10th Cir. 2004) (explaining that the opinion of an examining physician is

generally entitled to less weight than that of a treating physician.).

The ALJ also failed to provide the full context for Mr. Mcauliffe's reported functional limitations. *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) (finding that the specific facts of claimant's daily activities painted a very different picture than the generalities relied upon by the ALJ); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (finding that sporadic performance of activities of daily living does not establish that a person is capable of engaging in substantial gainful activity). For example, the ALJ stated that Mr. Mcauliffe testified that he "helps care for the kids, is able to drive, cleans yards three times a month, and goes shopping at Walmart." (Tr. 483.) However, Mr. Mcauliffe also testified that he took care of his 8 and 10 year old children only when his wife had to work evenings; that he drives short distances, but that if he drives longer distances he has to stop several times to stretch; that when he cleans the yard, he needs three or four days to recover; and that if he goes to Walmart with his wife, he has to rest several times while there. (Tr. 505-06, 519-20, 521-22.) The ALJ stated that Mr. Mcauliffe also reported in his function report that he "cares for a parent, cares for children, prepares meals for the entire family, is able to do laundry, take out the trash, and do yard work." (Tr. 483.) Mr. Mcauliffe reported that he cares for a son and his grandmother, but that his mother also helps take care of the grandmother and takes her to appointments.[16] (Tr. 743.) He reported that he spends 15-20 minutes preparing food, but that he has to sit and stand while cooking due to pain. (Tr. 744.) He reported that he can do laundry, take out the trash, and rake the yard, but that it takes several hours because of his need to sit down and rest, and that he is able to do these activities only once every two weeks. (*Id.*) In short, the ALJ's analysis of Mr. Mcauliffe's claims of disabling pain is not supported by substantial evidence.

---

[16] Mr. Mcauliffe testified that his care of his grandmother amounts to making sure she eats and takes her medications. (Tr. 519.)

C.    **Remaining Issues**

The Court will not address Mr. Mcauliffe's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

D.    **The Court Will Remand for Additional Administrative Proceedings**

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits.  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)).  When the Commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate.  *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings").  The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion."  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quoting *Thaete v. Shalala*, 826 F. Supp. 1250, 1252 (D. Colo. 1993)).

This case has been pending for over ten years.   The administrative record is complete. There have been two administrative hearings and two decisions by ALJs.   Both times,

Mr. Mcauliffe met his burden to show his disability at the first four steps of the sequential evaluation process. The Commissioner has now, for the second time, failed to meet her burden at step five to show that Mr. Mcauliffe could perform other work. That said, the Court is not persuaded that remand for additional fact-finding would merely delay the inevitable receipt of benefits. Here, in making her RFC assessment as to Mr. Mcauliffe's physical limitations, the ALJ relied on nonexamining State agency medical consultants N. D. Nickerson, M.D.,[17] and Craig Billinghurst, M.D., according their opinions significant weight; and on examining State agency medical consultant Levi I. Maes, M.D., according his opinion some weight. (Tr. 483.) Their opinions conflict with Dr. Delahoussaye's opinions. (Tr. 293-300, 1084-86, 1118-122.) It is the ALJ's duty to resolve this conflict. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that the ALJ is entitled to resolve conflicts in the record) (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) and *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)). The Court is therefore remanding for additional administrative proceedings.

## IV. Conclusion

For the reasons stated above, Mr. Mcauliffe's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 23) is **GRANTED.**

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[17] Having found grounds to remand as to other issues, the Court does not address Mr. Mcauliffe's argument that the ALJ improperly relied on Dr. Nickerson's opinion.